**CASES ARGUED AND DETERMINED**

IN THE

# SUPREME COURT

OF THE

# STATE OF CONNECTICUT

———————

### STATE OF CONNECTICUT *v.* ULISES ROBLES
(SC 20452)

McDonald, D'Auria, Mullins, Ecker and Seeley, Js.

*Syllabus*

Convicted, after a jury trial, of manslaughter in the first degree with a firearm and, after a trial to the court, of criminal possession of a firearm and illegal possession of a weapon in a motor vehicle, the defendant appealed to this court. The defendant had walked over to a parked car in which the victim was sitting in the driver's seat. While the driver's side window was down, the defendant began speaking to the victim and pulled out a handgun. The defendant then leaned into the car and fired a gunshot. The victim ultimately died from injuries she sustained as a result of a gunshot wound to her chest. During the defendant's trial, the prosecutor and defense counsel submitted a stipulation to the trial court, which indicated that the defendant previously had been convicted of two felonies unrelated to the charges in the present case. The court acknowledged that the stipulation was being admitted only for purposes of "count two," namely, the charge of criminal possession of a firearm. The court admitted the stipulation into evidence, stating that it would be a full exhibit "for purposes of the court trial," which pertained to both of the weapons charges. In addition, the state's chief medical examiner, G, testified about photographs from the victim's autopsy, which G had not performed, and about an autopsy report that G had reviewed before trial but that previously had been prepared by a former assistant medical examiner. On appeal from the judgment of conviction, *held*:

1. The defendant could not prevail on his unpreserved claim that the trial court had violated his constitutional right to confrontation by allowing G to testify about the autopsy photographs and autopsy report:

1

State *v.* Robles

G testified, on the basis of his personal knowledge and experience, that the autopsy photographs indicated that the victim had been shot at close range, and, because this portion of G's testimony was based solely on his examination of the photographs rather than the autopsy report, and because defense counsel was afforded the opportunity to cross-examine G regarding this testimony, the admission of G's testimony relating to the autopsy photographs did not violate the defendant's right to confrontation, and, accordingly, the defendant could not establish a constitutional violation for purposes of the third prong of *State* v. *Golding* (213 Conn. 233).

Moreover, G's testimony regarding the autopsy report, in which G stated that the report specified the injuries that resulted from the path that the bullet took once it had entered the victim's body, and that the report indicated that those injuries were the sole cause of the victim's death, was harmless insofar as G's testimony regarding the cause of the victim's death had minimal impact on the jury's verdict, and, accordingly, the defendant's claim regarding G's testimony about the autopsy report failed under the fourth prong of *Golding*.

Specifically, other evidence admitted at the defendant's trial independently established that the victim had died of a gunshot wound inflicted by the defendant, including G's testimony based on the autopsy photographs and the testimony of multiple eyewitnesses who had seen the defendant, while in possession of a handgun, lean into the driver's side window of the vehicle in which the victim was sitting, heard a gunshot, and viewed the gravely wounded victim.

Furthermore, defense counsel acknowledged during closing argument that G's testimony regarding the cause of the victim's death was not particularly important and even conceded that the victim died from injuries that the defendant had inflicted, as counsel's theory of defense was that the defendant had been too intoxicated to form the intent to kill the victim and that the jury, therefore, should have found him guilty only of criminally negligent homicide.

2. The evidence was insufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle, and, accordingly, this court reversed the defendant's conviction on that charge and remanded the case with direction to render a judgment of acquittal on that charge and for resentencing on the remaining counts:

To prove that an individual is guilty of illegal possession of a weapon in a motor vehicle, the state must prove beyond a reasonable doubt, among other elements, that he had no proper permit for the weapon that he was charged with possessing.

The stipulation that the prosecutor and defense counsel submitted to the court indicated that the defendant previously had been convicted of

State *v.* Robles

two felonies, and the defendant's prior felony convictions likely would have rendered him ineligible, pursuant to statute (§§ 29-28 (b) (2) (A) and 29-30 (b)), to receive a permit or permit renewal at or around the time of the incident that formed the basis of the charges in the present case.

Nevertheless, the prosecutor presented no other proof during the presentation of evidence that the defendant did not have a proper permit when he was in possession of the weapon with which he shot the victim.

Because the prosecutor and the trial court stated during the trial that the stipulation was being admitted only for purposes of the count of the information charging the defendant with criminal possession of a firearm, and because evidence that is offered and admitted for a limited purpose cannot be used for another and totally different purpose, the trial court improperly relied on the stipulation to support its determination that the defendant could not have had a proper permit in connection with its finding of guilt on the count of the information charging the defendant with illegal possession of a weapon in a motor vehicle.

Moreover, because the stipulation was the only evidence that the defendant previously had been convicted of a felony, which was critical to the trial court's determination that the defendant had lacked a proper permit, the evidence presented was insufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

Even though defense counsel stated that the stipulation was limited to the "court trial," which involved both of the weapons charges, and the trial court acknowledged, when the stipulation was admitted, that it was "going to be a full exhibit for purposes of the court trial," the foregoing references to "court trial," when viewed in context, were merely confirming the prosecutor's prior statement that the stipulation was being admitted only as to the count charging the defendant with criminal possession of a firearm, which crime specifically includes an element that the defendant have a prior felony conviction, and that the stipulation needed to be marked as a court exhibit to ensure that it was not provided to the jury, which was tasked with considering only the homicide charge.

Furthermore, the trial court's remark after the close of evidence that the stipulation was "the only evidence that was received solely for the second and third count," which pertained to both weapons charges, was not an evidentiary ruling, as the stipulation had been admitted two weeks beforehand, during the presentation of evidence, and there was no merit to the state's claim that defense counsel's failure to object when the prosecutor argued that the stipulation was relevant to the count charging the defendant with illegal possession of a weapon in a motor vehicle or when the trial court relied on the stipulation to support its finding that the defendant was guilty of that crime demonstrated that counsel intended that the stipulation would be admitted for purposes of the

State *v.* Robles

count charging the defendant with illegal possession of a weapon in a motor vehicle.

In addition, when, as in the present case, a fact finder relies on evidence that was admitted, but for a purpose other than the limited purpose for which the evidence was properly introduced, a reviewing court cannot consider that evidence in determining whether the evidence was insufficient to support the defendant's conviction and must direct a judgment of acquittal if it concludes that other admitted evidence was insufficient to support the conviction.

(*Two justices concurring in part and dissenting
in part in two opinions*)

Argued October 18, 2022—officially released September 19, 2023

*Procedural History*

Substitute information charging the defendant with the crimes of murder, criminal possession of a firearm and illegal possession of a weapon in a motor vehicle, brought to the Superior Court in the judicial district of Hartford, where the charge of murder was tried to the jury before *Graham, J.*; verdict of guilty of the lesser included offense of manslaughter in the first degree with a firearm; thereafter, the charges of criminal possession of a firearm and illegal possession of a weapon in a motor vehicle were tried to the court, *Graham, J.*; finding of guilty; judgment of guilty in accordance with the jury's verdict and the court's finding, from which the defendant appealed to this court. *Reversed in part*; *judgment directed in part*; *further proceedings.*

*Julia K. Conlin*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Anthony Bochicchio*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

SEELEY, J. In the early morning hours of New Year's Day, 2017, the defendant, Ulises Robles, shot the victim,

State *v.* Robles

Luz Rosado, from close range while she sat in her vehicle. The state charged the defendant with murder in violation of General Statutes § 53a-54a (a), criminal possession of a firearm in violation of General Statutes (Rev. to 2017) § 53a-217 (a) (1),[1] and illegal possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 2017) § 29-38 (a).[2] The defendant elected a jury trial on the murder charge and a bench trial on the charges of criminal possession of a firearm and possessing a weapon in a motor vehicle. The jury found the defendant not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a. After the bench trial, the court found the defendant guilty of both criminal possession of a firearm and possessing a weapon in a motor vehicle.

The defendant appealed from the judgment of the trial court to this court pursuant to General Statutes § 51-199 (b) (3).[3] On appeal, the defendant claims that (1) the trial court violated his right to confront the witnesses against him under the sixth amendment to the United States constitution[4] by allowing Chief Medical Examiner James Gill to testify about the results of the victim's autopsy, which he had not performed himself, and (2) the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle. We disagree with the defendant's first claim and affirm

[1] Hereinafter, all references to § 53a-217 in this opinion are to the 2017 revision of the statute.

[2] Hereinafter, all references to § 29-38 in this opinion are to the 2017 revision of the statute.

[3] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a . . . felony . . . for which the maximum sentence which may be imposed exceeds twenty years . . . ."

[4] The right to confrontation guaranteed by the sixth amendment is made applicable to the states through the due process clause of the fourteenth amendment. See, e.g., *Pointer* v. *Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

State *v.* Robles

the trial court's judgment as to the conviction of manslaughter in the first degree with a firearm. With respect to the defendant's second claim, we agree that the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle and, therefore, reverse the trial court's judgment as to that conviction.

The jury reasonably could have found the following relevant facts. On the evening of December 31, 2016, the defendant and two friends, Richard Colon and Jose Restrepo, were celebrating New Year's Eve. After having a few drinks at another friend's home, Colon drove the defendant and Restrepo to Lambada, a night club in Hartford. Colon drove a black Nissan Maxima. Once they arrived outside of Lambada, they stayed in the vehicle and continued drinking for a period of time. After midnight, they entered Lambada. Inside the club, the friends continued drinking, and the defendant appeared to others to be intoxicated. They stayed at the club until it closed at 3 a.m.

Colon then drove the defendant to Park Street, intending to drop him off there. When they arrived at Park Street, Colon saw a friend and pulled over to wish the friend a happy birthday. After speaking with his friend, he noticed the victim, sitting in the driver's seat of a silver Honda Accord across the street. In the passenger seat of the victim's vehicle was Nelson Ortiz. Colon walked over to the vehicle, briefly spoke to the victim, kissed her on the cheek, wished her a happy new year and told her to call him. Colon then walked away from the vehicle.

The defendant also had approached the driver's side of the vehicle and began speaking with the victim. He remained there after Colon left. While speaking to the victim, the defendant pulled out a black semiautomatic handgun and "racked" it, meaning he loaded a new

State *v.* Robles

round into the chamber. Ortiz thought that the defendant was simply showing off the gun in a bragging manner.

Meanwhile, Scott Parker, a Hartford police officer on patrol in the area, was driving toward the victim's vehicle. As he approached the vehicle, he saw the defendant standing along the driver's side. Parker observed that the defendant was "animated in his gestures," but Parker could not hear what he was saying. Parker saw the defendant lean into the victim's vehicle and then heard a gunshot. At that point, Parker saw the defendant back away from the driver's side window of the vehicle holding a handgun.

Parker stopped his vehicle and ordered the defendant to drop the handgun, but the defendant continued walking toward the Nissan Maxima, which was parked in front of the victim's vehicle. The defendant entered the passenger side of the Nissan Maxima with the handgun. The defendant called to Colon, asking for the keys. When Colon refused, the defendant exited the Nissan Maxima and ran westbound on Park Street. Parker chased and ultimately apprehended the defendant a short distance away from the shooting.

After handcuffing the defendant and placing him in the custody of another police officer, Parker returned to the scene of the shooting. When he looked inside of the victim's vehicle, he saw that the victim had a gunshot wound to her chest. She was unresponsive. It was later determined that the bullet had perforated the victim's aorta, trachea and esophagus, which resulted in her death.

The defendant was charged in a substitute information with murder in violation of § 53a-54a (a) (count one), criminal possession of a firearm in violation of § 53a-217 (a) (1) (count two), and possessing a firearm in a vehicle in violation of § 29-38 (a) (count three). The murder count was tried to a jury, and the two firearm counts were tried to the court. The jury found

State *v.* Robles

the defendant not guilty of murder but guilty of the lesser included offense of manslaughter in the first degree with a firearm. The trial court found the defendant guilty of both firearm counts. The court sentenced the defendant to a total effective sentence of twenty-six years of imprisonment. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that he was deprived of his sixth amendment right to confront witnesses against him when the trial court allowed Gill to testify regarding the victim's autopsy, which Gill had not performed himself but was instead performed by former assistant medical examiner Susan Williams. He contends that Gill's testimony concerning Williams' autopsy report constituted testimonial hearsay because the report was created in anticipation of trial. Accordingly, he contends, Gill's testimony was inadmissible. See *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) ("[when] testimonial [hearsay] evidence is at issue . . . the [s]ixth [a]mendment demands what the common law required: unavailability and a prior opportunity for cross-examination"); *State* v. *Walker*, 332 Conn. 678, 689, 212 A.3d 1244 (2019) ("testimonial hearsay is admissible against a criminal defendant at trial only if the defendant had a prior opportunity for cross-examination and the witness is unavailable to testify at trial" (internal quotation marks omitted)).

The state responds that, because the defense made a tactical decision not to raise this claim at trial, the claim fails under the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See *State* v. *Holness*, 289 Conn. 535, 543–44, 958 A.2d 754 (2008) (defendant cannot prevail under third prong of *Golding* "when . . . counsel has waived a

State *v.* Robles

potential constitutional claim in the exercise of his or her professional judgment''). In the alternative, the state claims that the admission of Gill's testimony about the autopsy report was harmless beyond a reasonable doubt because it established only the cause of the victim's death, including that she was shot at close range, which was consistent with the defendant's theory that the gun accidentally discharged when he was intoxicated and showing it off to the victim. In addition, the state contends that Gill's testimony about the autopsy report was cumulative of other testimony because (1) Gill independently testified that the autopsy photographs had shown that the victim was shot at close range, and the admission of this testimony did not violate the confrontation clause; and (2) the testimony of eyewitnesses overwhelmingly corroborated Gill's testimony based on the autopsy report that the victim was shot at close range and that she died from the gunshot.[5] We agree with the state that the admission of Gill's testimony was harmless beyond a reasonable doubt, and, therefore, we need not address the state's contention that the defendant waived this claim.

The following additional facts are relevant to this claim. Before trial, the prosecutor filed a pretrial witness list that included both Gill and Williams as potential witnesses. At trial, the prosecutor called only Gill as a witness. Gill testified that Williams had performed the autopsy on the victim but that she no longer worked in his office. Gill also testified that he had reviewed Williams' autopsy report before trial.

Gill further testified that Williams' report indicated that the victim had died by a gunshot wound to her upper chest. He testified that the report indicated that

[5] The state also notes that it does not concede that an autopsy report constitutes testimonial hearsay for confrontation clause purposes under *Crawford* v. *Washington*, supra, 541 U.S. 36, but contends that we need not address this issue if it prevails on either of its other claims. We agree.

State *v.* Robles

the bullet perforated the victim's aorta, trachea, and esophagus before becoming lodged in a bone in her spinal column, and that bleeding from the aorta caused cardiac tamponade, which prevented the heart from pumping and caused the victim's death. Gill explained that the injuries from the gunshot were the sole cause of the victim's death. Defense counsel did not object to any of this testimony, and neither the prosecutor nor defense counsel sought to have the autopsy report itself admitted into evidence at trial.

During Gill's testimony, the prosecutor introduced into evidence several photographs from the autopsy, with no objection by defense counsel. Gill testified that the photographs showed the presence of "stippling" on the skin around the entry wound. He explained that stippling consists of visible bumps on exposed skin caused by partially burned gunpowder grains discharged from a firearm at close range. He further testified that the stippling visible in the autopsy photographs suggested that the gun that inflicted the fatal gunshot wound was "within about six inches or so" of the victim when it was fired.

Defense counsel cross-examined Gill, utilizing and highlighting parts of the autopsy report indicating that the victim had alcohol, marijuana and phencyclidine (PCP) in her system at the time of her death, as well as questioning him with respect to the caliber of bullet that was recovered from the victim's body. There was no cross-examination about the autopsy report as it related to the cause of death or any other issues.

During closing argument, defense counsel acknowledged that the defendant had shot and killed the victim but claimed that the defendant neither had intended to cause the victim's death nor had acted recklessly in doing so. Defense counsel argued that the defendant

State *v.* Robles

was, therefore, guilty only of criminally negligent homicide, not murder or manslaughter.

We conclude that (1) to the extent that the defendant challenges the admission of Gill's testimony concerning the autopsy photographs, the admission of that testimony did not violate the confrontation clause, and (2) because Gill's testimony based on the autopsy photographs, as well as other eyewitness testimony, independently established that the victim died after she was shot at close range, the admission of Gill's testimony concerning Williams' autopsy report was harmless.

With respect to the autopsy photographs, Gill testified, on the basis of his personal knowledge and expertise, that they showed stippling, which indicated that the victim had been shot at a range of approximately six inches. This portion of his testimony was based solely on his examination of the autopsy photographs, not on the autopsy report.[6] Because defense counsel could have subjected Gill's testimony about the photographs to cross-examination, we conclude that the admission of the testimony did not violate the confrontation clause.[7] See *State* v. *Lebrick*, 334 Conn. 492, 528,

---

[6] Specifically, Gill testified:

"[The Prosecutor]: And, showing you state's [exhibit] 32, [a photograph of the victim's wound], doctor, there's the picture of what we've just described as stippling, and would this be what you called the stippling?

"[Gill]: Correct. It extends on the neck and the chest.

"[The Prosecutor]: And what would a sample of stippling of that size tell you in [relation] to the injury?

"[Gill]: Well, the presence of the stippling and/or fouling can you give you an indication of the range of fire; how far the muzzle was from the target.

"[The Prosecutor]: And would it indicate it was close for a stippling?

"[Gill]: Yes. We would call this . . . a close range gunshot wound. When you see both the stippling and that—that sootlike fouling material, we call that close range, which means within about six inches or so from the . . . target."

[7] The defendant contends that "there is no support in the record for the notion that Gill made his own independent findings regarding the photographs." We disagree. The defendant does not claim that, as chief medical examiner, Gill did not possess the personal knowledge and expertise to interpret photographs of a gunshot wound, and our review of the transcript

State *v.* Robles

223 A.3d 333 (2020) ("[when] . . . expert witnesses present their own independent judgments, rather than merely transmitting testimonial hearsay, and are then subject to cross-examination, there is no [c]onfrontation [c]lause violation" (internal quotation marks omitted)). We conclude, therefore, that this claim fails under the third prong of *Golding*.

With respect to the defendant's claim that the admission of Gill's testimony based on Williams' autopsy report violated the confrontation clause, we conclude that, even if the testimony had been improperly admitted, because Gill's testimony about the photographs constituted admissible, independent and compelling evidence that the victim died of the gunshot wound that the defendant had inflicted—and because the defense conceded as much at trial—the state has sustained its burden of demonstrating that any claimed error was harmless beyond a reasonable doubt. See, e.g., *State* v. *Campbell*, 328 Conn. 444, 512, 180 A.3d 882 (2018) ("[i]t is well established that a violation of the defendant's right to confront witnesses is subject to harmless error analysis" (internal quotation marks omitted)).[8] Moreover, multiple eyewitnesses saw the defendant lean into the driver's side window of the victim's vehicle, heard a

of the trial court proceedings satisfies us that there simply was no other basis for Gill's testimony.

[8] "When an [evidentiary] impropriety is of constitutional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]. . . . Whether the error was harmless depends on a number of factors, such as the importance of the evidence to the state's case, whether the evidence was cumulative of properly admitted evidence, the presence or absence of corroborating evidence, and, of course, the overall strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Culbreath*, 340 Conn. 167, 191–92, 263 A.3d 350 (2021).

State *v.* Robles

gunshot and saw the gravely wounded victim. Most significant, the prosecutor introduced into evidence a written statement from Ortiz, who was sitting in the passenger side of the vehicle at the time the victim was shot. In his statement, which was read into evidence, Ortiz averred that, on the night of the shooting, he and the victim went to get gas and then for a ride. As they were driving around, they saw a couple of men near the corner of Park Street and Broad Street. The victim parked the vehicle and the two men, whom Ortiz had never seen before, approached the driver's side of the vehicle and began talking to the victim. Ortiz did not understand the entirety of the conversation because the victim and the men were speaking in English, which Ortiz did not speak. One of the men left after a minute, but the other man remained next to the vehicle. The man who remained next to the vehicle then took out a semiautomatic handgun and "racked" it. Ortiz stated that the man was not acting in a threatening manner but seemed to be bragging and showing off the handgun. After producing the gun, the man stepped in front of the vehicle for a moment and then returned to the driver's side window. At that point, Ortiz heard a gunshot and looked at the victim. He saw blood and noticed that the victim was having a hard time breathing.

In addition to Ortiz' statement, Parker, who was on patrol in the area of Park Street on the night of the shooting, testified that he saw the defendant talking with the victim and leaning into the driver's side window of her vehicle. Parker was not able to hear the conversation but thought the defendant seemed animated, as if he was arguing. As the defendant was leaning into the window, Parker heard a "bang" and stopped his cruiser. At that point, Parker saw the defendant lean back out of the window of the vehicle and noticed a black semiautomatic handgun in the defendant's hand. After apprehending the defendant, Parker returned to the vehicle

State *v.* Robles

and saw that the victim had a gunshot wound to her chest and was unresponsive.

Finally, as we noted, defense counsel acknowledged during his closing argument that Gill's testimony on the cause of the victim's death was not particularly important, and he conceded that the victim died from the wound that the defendant had inflicted.[9] He argued only that the defendant was too intoxicated to form the intent to kill and that the jury should, therefore, find him guilty only of criminally negligent homicide. This argument is entirely consistent with Gill's testimony that (1) according to the autopsy report, the victim died from a single gunshot wound, and (2) based on the stippling present in the autopsy photographs, the defendant shot her at close range.

We therefore conclude that Gill's testimony that the cause of the victim's death was the gunshot had minimal impact on the jury's verdict. There simply was no genuine issue at trial concerning the cause of the victim's death or whether the defendant had shot her from close range. Instead, the primary issue that the jury had to determine, as the court indicated in its jury charge, was whether the defendant acted intentionally, with extreme indifference to human life, recklessly or with criminal negligence, an issue on which Gill's testimony was, at best, only minimally probative. Accordingly, we conclude that, even if the trial court had improperly admitted Gill's testimony based on the autopsy report, the state has met its burden of demonstrating that any error in that regard was harmless beyond a reasonable doubt and the claim, therefore, fails under the fourth prong of *Golding.*

_____

[9] Defense counsel argued: "The seventh witness that I'm saying is not something I think you're [going to] debate much is . . . Gill. We agree that a death was caused by [a] gunshot. The state has to put on proof of death, or it wouldn't be a murder or a homicide trial, so it's necessary, but I don't find it particularly critical to your decision."

State *v.* Robles

The defendant contends that, to the contrary, the issue of his proximity to the victim at the time of the shooting was in dispute and was critical to establishing his intent. He further suggests that, in the absence of Gill's testimony, the jury reasonably could have credited Colon's testimony that the defendant was across the street from the vehicle in which the victim was sitting when the gun went off. We are not persuaded. Colon did not testify that the defendant was across the street but, rather, that he was uncertain as to the defendant's precise location at the time of the shooting.[10] In contrast, Ortiz, who had no apparent motive to lie, and who defense

---

[10] The following colloquy occurred between the prosecutor and Colon:

"[The Prosecutor]: [I] [w]ant to clarify a few things. Let's go to when you're standing over by the twenty-four hour store, and, at that point, when you're on the same side of the street as the store, which would be on the right side of this picture.

"[Colon]: Um-hum.

"[The Prosecutor]: While you're standing there . . . before you walk across the street, do you know where the defendant was . . . ?

"[Colon]: Believe on the same side as me.

"[The Prosecutor]: Now, I'm asking if you—do you know exactly? Did you remember where he was, or [are] you guessing where he was?

"[Colon]: I'm just . . . guessing [because] that's where everybody was— went towards the store.

"[The Prosecutor]: So, when you start walking across the street, do you know where he was, or—or—

"[Colon]: I just knew . . . I left everybody behind, and I just proceeded to walk across the street.

"[The Prosecutor]: And, as you're walking across the street, is there any point where you're turning around to look if anybody's following you?

"[Colon]: No.

"[The Prosecutor]: You say you're—you went over to talk to [the victim], who you knew, right?

"[Colon]: Correct.

"[The Prosecutor]: And, while you're talking to her, are you looking around to see where—at any point to see where the defendant or [Restrepo] are?

"[Colon]: No. The only thing I looked at was to the left of me, [because] I seen the—the cop cruiser coming down.

* * *

"[The Prosecutor]: And, while you were talking to [the victim] at the car, do you have any idea where the defendant is at that point?

"[Colon]: I just knew everybody was behind me.

State *v.* Robles

counsel singled out as "the most important [witness] in this case," stated unequivocally that he saw the defendant standing next to the driver's side window of the victim's vehicle when the gun went off. Parker also testified unequivocally that the defendant was leaning into the window when the gun went off. We conclude, therefore, that it is not reasonably possible that Gill's testimony about the autopsy report could have influenced the judgment of the jury as to any disputed issue bearing on any element of the crime.

II

The defendant next claims that the evidence was insufficient to support his conviction of possessing a weapon in a motor vehicle in violation of § 29-38 (a)[11] (count three). Specifically, the defendant contends that there was insufficient evidence to support the trial court's finding that he did not possess a proper permit for the gun on the following two grounds: (1) the trial court could not rely on the parties' stipulation that the defendant had been convicted of a felony to support its finding that he could not have had a proper permit for purposes of count three, charging him with violating § 29-38, because the stipulation was admitted exclusively for purposes of count two, charging him with criminal possession of a firearm in violation of § 53a-

---

"[The Prosecutor]: You knew they were behind you, but do you know where he went?

"[Colon]: No, I wasn't looking behind me."

[11] General Statutes (Rev. to 2017) § 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 or any machine gun which has not been registered as required by section 53-202, shall be guilty of a class D felony, and the presence of any such weapon, pistol or revolver, or machine gun in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

State *v.* Robles

217 (a) (1),[12] and (2) even if the trial court properly relied on the stipulation, it improperly took judicial notice of General Statutes §§ 29-28 and 29-30[13] to support its determination that the defendant could not have had a proper permit for the gun because the prosecutor did not ask the court to take judicial notice of those statutes during its presentation of evidence.[14] We agree with the defendant that the trial court improperly relied on the stipulation for purposes of count three. Because the stipulation was the only evidence that the defendant had been convicted of a felony, which was critical to the trial court's determination that the defendant lacked a proper permit for the gun, which, in turn, was an element of § 29-38, we conclude that there was insuffi-

[12] General Statutes (Rev. to 2017) § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of (A) a felony committed prior to, on or after October 1, 2013 . . . ."

[13] General Statutes § 29-30 provides in relevant part: "(b) A local permit originally issued before October 1, 2001, whether for the sale at retail of pistols and revolvers or for the carrying of pistols and revolvers, shall expire five years after the date it becomes effective and each renewal of such permit shall expire five years after the expiration date of the permit being renewed. On and after October 1, 2001, no local permit for the carrying of pistols and revolvers shall be renewed. . . .

"(c) A state permit originally issued under the provisions of section 29-28 for the carrying of pistols and revolvers shall expire five years after the date such permit becomes effective and each renewal of such permit shall expire five years after the expiration date of the state permit being renewed and such renewal shall not be contingent on the renewal or issuance of a local permit. A temporary state permit issued for the carrying of pistols and revolvers shall expire sixty days after the date it becomes effective, and may not be renewed. . . ."

Although § 29-30 has been amended since the events underlying the present case; see, e.g., Public Acts 2023, No. 23-73, § 1; Public Acts 2022, No. 22-102, § 5; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 29-30.

[14] The defendant concedes that he did not preserve this claim at trial and seeks review under *Golding*. See, e.g., *State* v. *Padua*, 273 Conn. 138, 177 n.44, 869 A.2d 192 (2005) ("any defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of *Golding*" (internal quotation marks omitted)). The state makes no claim that the issue is unreviewable.

State *v.* Robles

cient evidence to support the defendant's conviction under that statute.

The following facts are relevant to our resolution of this claim. As we previously indicated, the defendant elected a bench trial on count two, charging him with criminal possession of a firearm in violation of § 53a-217 (a) (1), and count three, possessing a weapon in a motor vehicle in violation of § 29-38 (a). The parties submitted a stipulation to the trial court, stating: "The [s]tate and [d]efense stipulate to the fact that prior to January 1, 2017, the [d]efendant had been convicted of a felony, to wit: (1) On January 4, 2006, in the Superior Court, [g]eographical [a]rea [number fourteen], [the defendant] was convicted of [illegal possession of a] [w]eapon in a [m]otor [v]ehicle, in violation of . . . § 29-38. (2) On December 5, 2006, in the Superior Court, [g]eographical [a]rea [number fourteen], [the defendant] was convicted of [b]urglary in the [t]hird [d]egree, in violation of [General Statutes §] 53a-103." At the time the stipulation was submitted to the court at trial, the prosecutor stated that the stipulation was being admitted only for purposes of the second count. Defense counsel then remarked that "this stipulation is limited to the court trial," and the parties agreed that it should be marked as a court exhibit and should not be submitted to the jury. The trial court acknowledged twice that the stipulation was being admitted only for purposes of count two and admitted it into evidence, stating that "[i]t's going to be a full exhibit for purposes of the court trial . . . ."[15] The state presented no other evidence at

[15] The following colloquy occurred at trial:

"[The Prosecutor]: The state prepared, and both the state and defense signed, a stipulation regarding the prior felony *as it applies to the second count* that will go to the court, and we'd have—I guess I would prefer that be a court exhibit. [T]his way, we know it won't end up with the jury.

"The Court: Yeah, but some court exhibits do go to the jury, so—

"[Defense Counsel]: Well, it's—this stipulation is limited to the court trial.

"The Court: *Stipulation is limited to count two*, which is not being submitted to the jury. Yeah, so—and that's—do you have it? Has it been filed yet?

State *v.* Robles

trial that would support a finding that the defendant lacked a proper permit for a firearm.

Two weeks after the stipulation was submitted as an exhibit, one day after the close of evidence and immediately before the prosecutor's closing argument, the trial court stated: "[T]he only evidence that was received solely for the second *and third count* was the stipulation. There was no testimony taken outside of the jury's presence. So, with that in mind, I'm going to have the state go ahead and make argument with regard to [count] two and count three to the court." (Emphasis added.)

With respect to count three, the prosecutor argued: "As far as the [charge of possessing a] weapon in a motor vehicle, I would note that [the defendant] mentioned having the gun at the club. He had to make it from the club to Park Street in a motor vehicle. He then jumps into another motor vehicle, potentially still with that gun, or still with that gun according to Officer Parker. So, I think, really, we don't know if either count is necessarily in question. I will also note that there's no limitation as to barrel length of the gun, [as] charged in the second count, nor, do I believe, in the third count."

The court then engaged in the following colloquy with the prosecutor:

"The Court: All right. Let me make inquiry with regard to the carrying the weapon in the motor vehicle

_____

"[The Prosecutor]: I just—it's on the clerk's desk, Your Honor.

"The Court: All right. And it's signed by both counsel, I take it?

"[The Prosecutor]: Yes.

"[Defense Counsel]: Yes.

"The Court: All right. So, that'll *be admitted as evidence . . . as to count two*, which is being submitted to the [court] only, and I think you may want to put two stickers on, Madame Clerk. One marking it as a court [exhibit]. It's going to be a full exhibit for purposes of the court trial . . . ." (Emphasis added.)

State *v.* Robles

[charge]. There is a fourth . . . element that the defendant had no permit for the pistol.

"[The Prosecutor]: Sure, Your Honor. He's a convicted felon, and he's not capable of holding a permit.

"The Court: And you're referring to state statute?

"[The Prosecutor]: I thank Your Honor for taking judicial notice of that.

"The Court: Yeah, I—and I don't think I actually need to take judicial notice of the statute, which—

"[The Prosecutor]: No—no.

"The Court: —[T]he evidence is closed already, so it might be a little late for that, but yes, sir . . . ."

The next day, after the jury returned its verdict of guilty on the charge of manslaughter in the first degree with a firearm, the trial court found the defendant guilty on counts two and three. The trial court explained: "As to count three, [possessing a] weapon in a motor vehicle, the court finds that the state has proven the elements of that offense beyond a reasonable doubt. The defendant was at the place, date, and time alleged in count three of the information, occupying a Nissan Maxima, and, at that time, he had in his possession a pistol. He knew he had the pistol while he was in the vehicle. As a convicted felon since 2006, he had no permit for the pistol. [He was] ineligible for such under . . . [§ 29-28 (b) (2) (A)], and any permit he might have held before 2006 would have expired by the passage of time under . . . [§ 29-30 (b) and (c)]. Therefore, at the time the defendant possessed the weapon in the vehicle, he had no permit.

"I further find that, at the time the defendant possessed the weapon in the vehicle, which was shortly after the shot was fired, he was then the sole occupant

State *v.* Robles

of the vehicle. Therefore, I find the defendant guilty as to count three.''

The standard of review we apply to a claim of insufficient evidence is well established. Our analysis proceeds in two parts: ''First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

''[The finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt.'' (Internal quotation marks omitted.) *State* v. *Campbell*, supra, 328 Conn. 503–504.

In addition, and of particular relevance to the present case, we repeatedly have emphasized that ''[e]vidence [that] is offered and admitted for a limited purpose only . . . cannot be used for another and totally different purpose.'' (Emphasis omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 864, 37 A.3d 700 (2012); see *Smith* v. *Greenwich*, 278 Conn. 428, 451, 899 A.2d 563 (2006) (''Evidence admissible for one purpose but not for another may nevertheless be admitted. . . . The court should, however, caution the jury . . . about the limited purpose of the exhibit.'' (Internal

State *v.* Robles

quotation marks omitted.)); *Fair Haven & Westville Railroad Co.* v. *New Haven*, 77 Conn. 667, 674, 60 A. 651 (1905) (taking note of evidentiary principle that "forbids evidence offered and admitted . . . for a limited purpose, and facts found [in light of] such evidence, to be used for another and totally different purpose"), aff'd, 203 U.S. 379, 27 S. Ct. 74, 51 L. Ed. 237 (1906); *State* v. *Knox*, 201 Conn. App. 457, 472, 242 A.3d 1039 (2020) (when evidence was admitted exclusively for purposes of one particular count, jury could not rely on evidence to support finding that state had established element of crime charged in another count), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021); see also Conn. Code Evid. § 1-4 ("[e]vidence that is admissible . . . for one purpose but not for another, is admissible . . . *for that purpose*" (emphasis added)); 1 R. Mosteller et al., McCormick on Evidence (8th Ed. 2020) § 59, pp. 481–83 (when evidence is admitted for limited purposes, trial court must instruct jury that it can consider evidence only for allowable purpose); Connecticut Criminal Jury Instructions 2.6-8, available at http://jud.ct. gov/JI/Criminal/Criminal.pdf (last visited September 8, 2023) ("[a]ny testimony or evidence which [the trial court] identified as being limited to a purpose or a defendant, [the jury] will consider only as it relates to the limits for which it was allowed, and [the jury] shall not consider such testimony and evidence in finding any other facts as to any other issue or defendant").

Section 29-38 (a) provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be guilty of a class D felony . . . ." To prove a violation of § 29-38 (a), "the state must prove the following elements: (1) that the defendant owned, operated or occupied the

State *v.* Robles

vehicle; (2) that he had a weapon in the vehicle; (3) that he knew the weapon was in the vehicle; and (4) that he had no [proper] permit or registration for the weapon." *State* v. *Delossantos*, 211 Conn. 258, 273, 559 A.2d 164, cert denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

We agree with the defendant that the evidence in the present case was insufficient to support a finding that he had no proper permit for the gun. As we previously indicated, the prosecutor and the trial court stated that the stipulation that the defendant had been convicted of two felonies in 2006 was being admitted only for purposes of count two, charging the defendant with criminal possession of a firearm, and, therefore, the stipulation was not before the court for purposes of count three, charging the defendant with possessing a weapon in a motor vehicle.[16] As we also have previously indicated, "[e]vidence [that] is offered and admitted for a limited purpose only . . . cannot be used for another and totally different purpose." (Emphasis omitted; internal quotation marks omitted.) *Curran* v. *Kroll*, supra, 303 Conn. 864. Accordingly, we conclude that the trial court improperly relied on the stipulation—which was the *only* evidence that would support a finding that the defendant had been convicted of a felony—to support its finding that the defendant could not have had a proper permit for the gun, which is a required element of § 29-38 (a).[17]

---

[16] We note, in this regard, that § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) has been convicted of (A) a felony committed prior to, on or after October 1, 2013 . . . ."

Thus, a felony conviction is an *element* of the offense of criminal possession of a firearm, unlike the offense of possessing a weapon in a vehicle in violation of § 29-38 (a), to which the existence of a felony conviction has a far less obvious and direct connection. This might explain why the parties chose to limit the use of the stipulation that the defendant had committed two felonies to establishing the elements of § 53a-217 (a) (1) (A).

[17] In light of this conclusion, we need not address the defendant's claim that the trial court improperly took judicial notice of §§ 29-28 (b) (2) (A)

State *v.* Robles

In support of its argument to the contrary, the state notes that, although the prosecutor stated that "both the state and [the] defense signed a stipulation regarding the prior felony as it applies to the second count," and although the trial court also acknowledged twice that the stipulation was being admitted only for purposes of count two, defense counsel stated that "this stipulation is limited *to the court trial,*" which included both counts two and three. (Emphasis added.) The state further points out that the trial court stated at the time that the stipulation was admitted that it was "going to be a full exhibit for purposes of the court trial" and, two weeks later, after the close of evidence, that "the only evidence that was received solely for the second *and third count* was the stipulation." (Emphasis added.) The state contends that these remarks establish that the parties intended, and that the trial court found, that the stipulation was being admitted for purposes of both count two and count three. The state further contends that the court's finding is reviewable only for clear error. See, e.g., *WiFiLand, LLP* v. *Hudson*, 153 Conn. App. 87, 99–100, 100 A.3d 450 (2014) ("We review the court's determination of the parties' intent, when the language

and 29-30 (b) to support its finding that he violated § 29-38 (a) because the state did not refer to the former two statutes during its presentation of evidence. We take this opportunity, however, to caution the state that it would have been the better practice to stipulate that the defendant did not have a permit for the gun when the shooting occurred or to present direct evidence to that effect, rather than to rely on the following chain of inferences: (1) the defendant was convicted of felonies in 2006; (2) therefore, he could not have obtained a proper permit for a gun thereafter under § 29-28 (b) (2) (A); (3) therefore, any proper permit that he had would have expired by 2017, when the shooting occurred, under § 29-30 (b); and (4) therefore, he had no proper permit and violated § 29-38 (a). Although it seems highly unlikely that the defendant could have had a proper permit for the gun in 2017 under these circumstances, it is not entirely clear to us that it was theoretically *impossible* for him to have possessed such a permit. For example, the parties did not stipulate that the defendant had not received pardons from the Board of Pardons and Parole for his 2006 felony convictions.

State *v.* Robles

of the stipulation is ambiguous, as we would review a factual conclusion. . . . We will uphold the court's factual findings unless those findings are clearly erroneous.'' (Internal quotation marks omitted.)).

We are not persuaded by the state's argument. Rather, we conclude that, when the crucial, initial references to the "court trial" are considered in context, it is clear that the comments made by defense counsel and the court were confirming the prosecutor's statement that the stipulation was being admitted only as to count two, to establish the fact that the defendant had a prior felony conviction to establish that element of the criminal possession count and, therefore, needed to be marked as a court exhibit to ensure that it was not provided to the jury. With respect to the court's remark after the close of evidence that the stipulation was "the only evidence that was received solely for the second *and third* count," that remark manifestly was not an evidentiary ruling, as the evidence had been admitted two weeks earlier. (Emphasis added.) Rather, it appears to be an imprecise way to state that the stipulation was the only evidence presented exclusively to the trial court. Alternatively, this statement may have been the first indication that the trial court was laboring under the misapprehension that the stipulation had been admitted for purposes of count three, in which case the court's understanding was clearly erroneous because there is nothing in the record to support it.[18] See, e.g., *O'Connor* v. *Larocque*, 302 Conn. 562, 574–75, 31 A.3d 1 (2011) ("[a] finding of fact is clearly erroneous when there is no evidence in the record to support it" (internal quotation marks omitted)).

---

[18] We assume, without deciding, for purposes of this conclusion, that the state is correct that the *purpose* for which the stipulation was introduced, that is, whether it was introduced only for purposes of count two, or for purposes of both count two and count three, as distinct from the *substantive meaning* of the stipulation, is a question of fact subject to clearly erroneous review.

State *v.* Robles

The state also contends that the fact that defense counsel did not object when the prosecutor argued that the stipulation was relevant to count three or when the trial court relied on the stipulation to support its ruling that the defendant had violated § 29-38 (a) shows that defense counsel intended that the stipulation would be admitted for purposes of both count two and count three. We are not persuaded. As the trial court itself observed, the evidentiary record was closed when the prosecutor first relied on the stipulation with respect to count three. Defense counsel did not correct the prosecutor's misstatement of the record—perhaps due to oversight, perhaps because a misstatement by opposing counsel regarding the state of the record required no response, perhaps for another reason—but counsel certainly did not express agreement, and we are aware of no principle of law permitting an alteration of the evidentiary record, on the basis of the failure to object to an opposing lawyer's misstatement during closing argument. The stipulation had been admitted into evidence only as to count two during the evidentiary phase of the trial, and nothing that occurred during closing arguments changed that fact.[19] In any event, we cannot conclude that this conduct nullifies the clearly stated intent of the parties at the time of the admission of the stipulation that it was being admitted only for purposes of count two.

Justice Mullins contends, in his concurring and dissenting opinion,[20] that, properly understood, the defen-

[19] Justice Mullins, in his concurring and dissenting opinion, states that "it is lost on [him] how, on direct appeal, this purported oversight is or should somehow be treated differently from any other unpreserved evidentiary claim." As we explain subsequently in this opinion, the defendant has raised an insufficiency claim, not, as Justice Mullins contends, an evidentiary claim. As we previously explained, unpreserved insufficiency of the evidence claims are reviewable under *Golding*. See footnote 14 of this opinion. Thus, the fact that defense counsel's failure to object to the trial court's reliance on evidence that had not been admitted during trial for that particular purpose may have been the result of an oversight does not preclude review of the defendant's claim.

[20] Hereinafter, we refer to Justice Mullins as the concurring and dis-

State *v.* Robles

dant's claim that the trial court could not consider the stipulation for purposes of count three constitutes an unpreserved claim of evidentiary error, not an insufficiency of the evidence claim. Accordingly, he contends that, even if the trial court improperly considered the stipulation for purposes of count three, any such error would require a new trial and would not necessitate an acquittal.[21] This argument misunderstands the nature of the claim of error. Contrary to the concurring and dissenting justice's contention, the issue is not whether the trial court *improperly admitted* the stipulation for purposes of count three. The issue, rather, is whether the court *improperly used* evidence that was properly admitted in order to support a different purpose for which the evidence was not admitted. The trial court did not admit the stipulation for purposes of count three *at all* because it was never asked to do so.

Far from a "meaningless distinction," as characterized by the concurring and dissenting justice, there is a world of difference between a claim that a trial court erroneously admitted evidence and a claim that the decision maker misused evidence, i.e., that there was insufficient evidence to sustain a conviction except by the decision maker's use of evidence that was off limits for that purpose. If evidence offered by the state is admitted over an objection and is sufficient to establish the point for which it was admitted, the state is entitled to rely on the ruling and has no obligation to present additional, cumulative evidence on that point. See, e.g., *State* v. *Gray*, 200 Conn. 523, 538, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). If the trial court's evidentiary ruling is overturned on appeal, it would be unfair not to allow the

senting justice.

[21] The state has made no such claim but implicitly concedes that, if the stipulation was not admitted for purposes of count three, the evidence would be insufficient to support the defendant's conviction under that count.

State *v.* Robles

state an opportunity to present other evidence in support of the disputed point. No such considerations of reliance and fairness justify a second bite at the apple when, as in the present case, the state simply failed to present sufficient evidence in support of a required element of an offense at trial. See *State* v. *Kareski*, 137 Ohio St. 3d 92, 98, 998 N.E.2d 410 (2013) (court considered "unavailing any claim by the state that it relied on the trial court's taking of judicial notice [of fact establishing element of offense, and any] concern about forcing the state to offer cumulative evidence on every element rings hollow when the state offered" no evidence in support of element).

Moreover, to conclude that the state is entitled to a second bite at the apple when it had failed to present sufficient evidence in support of a required element at trial but when the fact finder has nevertheless found that the element was satisfied by using evidence that was not admitted or was not admitted for the purpose for which it was used, would almost certainly violate the double jeopardy clause of the fifth amendment to the United States constitution. See, e.g., *State* v. *Colton*, 234 Conn. 683, 691–92, 663 A.2d 339 (1995) ("[o]rdinarily, the [d]ouble [j]eopardy [c]lause imposes no limitation [on] the power of the government to retry a defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of insufficiency of the evidence" (internal quotation marks omitted)), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996). The state's failure to present sufficient evidence at trial, unlike the trial court's improper admission of evidence at trial, is not a trial error for double jeopardy purposes, and, therefore, the double jeopardy clause bars retrial. See *Burks* v. *United States*, 437 U.S. 1, 15, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (for double jeopardy purposes, "reversal for trial error, as distinguished from eviden-

State *v.* Robles

tiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case''); see also, e.g., *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99 (when state presented no evidence to support required element of offense at trial but trial court improperly took judicial notice of fact that supported required element, evidence was insufficient, trial court's improper taking of judicial notice did not convert state's failure to prove case into trial error and double jeopardy clause barred retrial).[22] Accordingly, in determining whether a remand for a new trial would result in a double jeopardy violation, the focus should be on the sufficiency of the evidence *presented by the state*, including any evidence that the trial court erroneously admitted under the rules of evidence, not on the sufficiency of the evidence *used by the fact finder*, including evidence that was not admitted at all or that was not admitted for the purpose for which it was used.[23]

[22] The court in *Kareski* expressly distinguished evidence that was improperly admitted at trial, which the reviewing court may consider when determining the sufficiency of the evidence, and evidence that was not admitted at trial but was nevertheless used by the trial court, which the reviewing court cannot consider. *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99.

[23] The concurring and dissenting justice states that we have made ''a meaningless distinction between the admission of the stipulation into evidence for count three and the trial court's consideration of the stipulation for purposes of count three. Such a distinction is irrelevant. Whether we call it improper admission or improper use or consideration, the error is an evidentiary or trial error, not unlike any other claim that a fact finder considered evidence for one count that it should not have.'' (Footnote omitted.) The logical extension of this argument is that, whenever a trial court has used information that was not admitted as evidence at trial to reach its decision—for example, when a trial court conducts its own independent investigation of the facts after the close of evidence—the information was, for all intents and purposes, admitted as evidence, albeit improperly. Thus, according to the concurring and dissenting justice, if the evidence presented by the state was insufficient without the supplemental information obtained by the trial court after the close of evidence, the remedy would be a remand for a new trial, whereas, if the court had *not* conducted an improper investigation, the remedy would be an acquittal. We cannot agree with such an untenable proposition. A factual investigation that is beyond the scope of

State *v.* Robles

Thus, when a trial court improperly considers evidence that was not admitted at trial for the relevant purpose, or that was not admitted at all, the reviewing court applies an insufficiency analysis based only on the evidence that was actually admitted and directs a judgment of acquittal if it concludes that the evidence was insufficient. See, e.g., *State* v. *Knox*, supra, 201 Conn. App. 473–74 ("Given the state's agreement to use the defendant's prior felony conviction only for a limited purpose, we reject its efforts to now apply that evidence to the tampering with physical evidence charge. We conclude, therefore, that the state presented insufficient evidence regarding the defendant's intent when he departed from the scene of the shooting. The evidence regarding his prior felony conviction could not be used to establish the element of intent in [connection with] the tampering with physical evidence charge. For these reasons, we conclude that no reasonable trier of fact could have found the defendant guilty of this charge, and the trial court properly granted the defendant's motion for judgment of acquittal as to the charge of tampering with physical evidence." (Footnote omitted.)); *Olivier* v. *Fraenkel Co.*, Docket No. 2006 CA 1501, 2007 WL 1300930, *2 (La. App. May 4, 2007) (trial court should not have considered documents that were not introduced into evidence at trial, and reviewing court could not consider them on appeal); *Hawes* v. *Downing Health Technologies*, *LLC*, Docket No. CV-16-857599, 2022 WL 1573737, *6 (Ohio App. May 19, 2022) ("[Certain documents] were not admitted, or even offered, at trial and should not have been considered by the trial court in rendering its decision. Consequently, in evaluating any of [the] assignments of error that [require] us to examine the evidence presented with regard to a claim, we must consider only whether the

the trial court's powers cannot convert the state's failure to prove its case into a trial error for double jeopardy purposes.

State *v.* Robles

actual admitted evidence was sufficient to meet [the plaintiff's] burden of proof without relying [on] the [unadmitted evidence] cited by the trial court. If the trial court considered evidence not admitted at trial, we must determine whether the trial court could have made the same decision without the evidence not admitted at trial.''), appeal denied, 169 Ohio St. 3d 1502, 207 N.E.3d 839 (2023); *State* v. *Kareski*, supra, 137 Ohio St. 3d 98–99 (when state presented no evidence to support required element of offense at trial but trial court improperly took judicial notice of fact that would support required element, reviewing court could not consider that fact when conducting sufficiency analysis, and acquittal was required because evidence was insufficient); see also *McDaniel* v. *Brown*, 558 U.S. 120, 131, 130 S. Ct. 665, 175 L. Ed. 2d 582 (2010) (when determining whether evidence was sufficient to sustain conviction, ''a reviewing court must consider all of the evidence *admitted by the trial court*, regardless of whether that evidence was admitted erroneously'' (emphasis added; internal quotation marks omitted)); *Dixon* v. *von Blanckensee*, 994 F.3d 95, 103 (2d Cir. 2021) (''federal appellate courts will not consider . . . evidence [that is] not part of the trial record'' (internal quotation marks omitted)); *State* v. *Edwards*, 314 Conn. 465, 478, 102 A.3d 52 (2014) (''we cannot consider evidence not available to the trial court to find adjudicative facts for the first time on appeal''); *State* v. *Morelli*, 293 Conn. 147, 153, 976 A.2d 678 (2009) (''a claim of insufficiency of the evidence must be tested by reviewing no less than, *and no more than*, *the evidence introduced at trial*'' (emphasis added; internal quotation marks omitted)).[24] Indeed, the concurring and dis-

_____

[24] We agree, of course, with the concurring and dissenting justice that a determination that the fact finder has improperly considered evidence that was not admitted at trial for the purpose for which the fact finder used it is subject to harmless error analysis. See, e.g., *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 229, 165 A.3d 174 (2017) (although trial court improperly considered evidence

State *v.* Robles

senting justice has not cited, and our research has not revealed, a single case in which a reviewing court conducting an insufficiency analysis has considered evidence that was not admitted at trial or that was admitted only for a purpose other than the purpose for which it was used.

To the extent that the concurring and dissenting justice contends that, whenever a trial court in a bench trial uses evidence that was clearly admitted for a limited, different purpose, it is implied that the trial court admitted the evidence for that purpose, albeit improperly, we disagree. First, we are aware of no authority for the proposition that a trial court can, sua sponte, admit evidence, or expand the limited purpose for which evidence was admitted, after the close of evidence.[25] Sec-

_____

for purpose for which it was not admitted, error was harmless because other evidence was sufficient to support court's factual finding); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 650, 867 A.2d 860 ("error was harmless because, even without [the evidence that was considered for a different purpose than the limited purpose for which it was admitted], there was sufficient evidence for the court to find for the plaintiffs"), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005). Thus, in the present case, if there had been evidence other than the stipulation that would have adequately supported a finding that the defendant previously had been convicted of the two felonies, the trial court's use of the stipulation to support that finding would have been harmless. This is because it is *the state's failure to prove its case* that bars retrial under the double jeopardy clause, not the fact finder's improper use of evidence for a purpose other than the one for which it was admitted. It is lost on us why the concurring and dissenting justice believes that these cases support his view that a reviewing court should consider evidence that was improperly used for a purpose for which it was not admitted in determining whether the evidence was sufficient and, if the court concludes that the evidence was insufficient without the improperly used evidence, should remand the case to the trial court for a new trial.

[25] Presumably, the concurring and dissenting justice will respond to this observation by agreeing that the trial court has no such power and arguing that this is why the trial court's admission of evidence, or its expansion of the limited purpose for which evidence has been admitted, after the evidence has closed, constitutes an *improper evidentiary ruling*. Unlike the issuance of evidentiary rulings during trial, however, which is in the trial court's authority, even when the court improperly exercises that authority, the sua sponte issuance of evidentiary rulings after the close of evidence is simply

State *v.* Robles

ond, as we previously explained, the constitutionality of allowing a retrial when the state has failed to present adequate evidence at trial to support a required element of an offense but when the trial court has incorrectly concluded, sua sponte, that evidence that was admitted exclusively for another purpose may be admitted to support that element, would be highly questionable under the double jeopardy clause.

Thus, we are not persuaded by the concurring and dissenting justice's attempt to distinguish *State* v. *Knox*, supra, 201 Conn. App. 457, on the ground that the trial court in that case instructed the jury that it could not use certain evidence that was admitted for a limited purpose for any other purpose; id., 472; whereas, in the present case, the trial court actually used the stipulation to support its finding of guilt on count three. If evidence was not admitted at trial, or if evidence was used for a purpose other than the limited purpose for which it was admitted, a reviewing court cannot consider the evidence as part its insufficiency analysis, regardless of whether the fact finder used it.

In reaching this conclusion, we recognize that, if a trial court failed to instruct the jury that evidence that has been admitted for a limited purpose can be used only for that purpose, that would be the effective equivalent of improperly admitting the evidence for any purpose on which it is probative. In that case, a reviewing court could consider the improperly admitted evidence as part of its sufficiency analysis. In the present case, however, we presume that the trial court knew that evidence admitted for a limited purpose is not admitted for a different purpose. See, e.g., *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003) ("[j]udges are presumed to know the law" (internal quotation marks

beyond the trial court's powers. At the very least, we have found no authority to suggest otherwise.

State *v.* Robles

omitted)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). The record also clearly establishes that the prosecutor presented the stipulation, and the trial court admitted it, only for purposes of count two. Thus, the fact that the court relied on the stipulation for purposes of count three does not mean that it improperly *admitted* the stipulation for that purpose but, rather, that it improperly *used* the stipulation for that purpose. Accordingly, we conclude that the evidence was insufficient to support the defendant's conviction of possessing a weapon in a vehicle in violation of § 29-38 (a), and the defendant, therefore, must be acquitted on that charge.

The judgment is reversed with respect to the defendant's conviction of possessing a weapon in a vehicle in violation of § 29-38 (a) and the case is remanded to the trial court with direction to render a judgment of acquittal on that charge only and to resentence the defendant on the remaining charges; the judgment is affirmed in all other respects.

In this opinion McDONALD and ECKER, Js., concurred.

D'AURIA, J., concurring in part and dissenting in part. I agree with part I of the majority opinion but respectfully dissent from part II. My dissent from part II of the majority opinion is based on my agreement with two parts of Justice Mullins' concurring and dissenting opinion. First, I agree with Justice Mullins that the record fairly reflects the parties' intent to submit the stipulation in relation to both counts two and three and that the trial court in fact admitted it for those purposes. Second, I agree with Justice Mullins that the trial court properly took judicial notice of General Statutes §§ 29-28 and 29-30 to support its determination that, in light of the parties' stipulation that the defendant, Ulises Robles,

State *v.* Robles

had been convicted of two felonies in 2006, he could not have had a proper permit for the gun that the trial court found he possessed while occupying a motor vehicle during the incident that led to his conviction. I therefore conclude that there was sufficient evidence to support the defendant's conviction of possession of a weapon in a motor vehicle in violation of General Statutes (Rev. to 2017) § 29-38 (a). I would affirm the trial court's judgment in all respects and not reach the other issues discussed in part II of both the majority opinion and Justice Mullins' concurring and dissenting opinion.

MULLINS, J., concurring in part and dissenting in part. I agree with part I of the majority opinion, but I respectfully disagree with part II. As the United States Supreme Court has explained, a trial court commits a " 'trial error' " when it "err[s] in admitting a particular piece of evidence, and without it there was insufficient evidence to support a judgment of conviction. But clearly with that evidence, there was enough to support the . . . [the finding or] verdict . . . ." (Emphasis omitted.) *Lockhart* v. *Nelson*, 488 U.S. 33, 40, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Under those circumstances, double jeopardy does not bar retrial because there is, in fact, sufficient evidence to support the finding or verdict, but the defendant has been convicted in a judicial process that was defective. See id., 34, 40–41. Consistent therewith, a trial error is subject to harmless error review, pursuant to which the reviewing court assesses how the error affected the finding or verdict. See, e.g., *United States* v. *Quinn*, 901 F.2d 522, 526, 528–29, 531 (6th Cir. 1990) (applying harmless error review to claim that trial court improperly admitted testimony of witness from suppression hearing but considering that same improperly admitted testimony in sufficiency of evidence analysis).

On the other hand, in deciding a sufficiency of the evidence claim, the reviewing court does not assess

State *v.* Robles

how the error affected the finding or verdict but, rather, considers all of the evidence that was considered by the fact finder, both properly and improperly admitted evidence, and determines whether there was sufficient evidence to support the finding or verdict. See, e.g., *State* v. *Gray*, 200 Conn. 523, 538–40, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). If the evidence was not sufficient, retrial is barred by double jeopardy, and an acquittal is required. See, e.g., id., 535–36. These two types of claims are distinct. See, e.g., *State* v. *Carey*, 228 Conn. 487, 496, 636 A.2d 840 (1994) (''[c]laims of evidentiary insufficiency in criminal cases are always addressed independently of claims of evidentiary error'').

The majority's resolution of this case is flawed because, by failing to consider evidence that was expressly considered by the fact finder in arriving at its finding, it merges these two distinct claims, only one of which was raised by the defendant, Ulises Robles—the sufficiency of the evidence. In considering that claim, this court must review the same quantum of evidence that the trial court reviewed and determine whether that evidence was sufficient to support the trial court's finding. See, e.g., id. (''appellate review of the sufficiency of the evidence . . . properly includes [improperly admitted] evidence even if such evidence was admitted despite a purportedly valid objection'' (citation omitted)).

Instead of addressing the defendant's sufficiency claim independently of evidentiary or trial error—which means that we should consider the stipulation in our review of the sufficiency of the evidence—the majority concludes that the trial court improperly relied on the stipulation for purposes of count three, which charged the defendant with illegal possession of a weapon in a motor vehicle, because the parties intended it to be admitted only for the limited purpose of count two, which charged the defendant with criminal possession of a firearm,

State *v.* Robles

and that, without this stipulation, there was insufficient evidence presented on count three. See part II of the majority opinion. Accordingly, the majority reverses the judgment of the trial court as to count three and remands the case to the trial court with direction to render a judgment of acquittal on that count. I disagree because, in considering a sufficiency of the evidence claim, we review all of the evidence the fact finder considered in arriving at its finding or verdict. Doing so in this case leads me to conclude that the stipulation that the defendant was a convicted felon constituted sufficient evidence to support the element of count three that he did not possess a proper permit for a firearm. See, e.g., *State* v. *Davis*, 324 Conn. 782, 794–95, 801, 155 A.3d 221 (2017); see also General Statutes (Rev. to 2017) § 29-38 (a).[1]

I

In the present case, it is undisputed that the prosecutor expressly relied on the stipulation for purposes of count three in his closing argument without any objection from defense counsel, and the trial court expressly considered it for purposes of count three as evidence supporting its finding.[2] Therefore, if the parties did intend

---

[1] All references to § 29-38 in this opinion are to the 2017 revision of the statute.

[2] I agree with the majority's recitation of the facts but take this opportunity to point out that the parties and the trial court appeared to treat the stipulation as if it applied to count three. I acknowledge that, in relaying the agreement of the parties to the court, the prosecutor initially stated that the stipulation applies to count two. I also note, however, that defense counsel told the trial court that the stipulation applies to the court trial. The majority contends that the only way to read the parties' statements is that defense counsel was only following the state's lead, and the real agreement was that the stipulation was limited to count two. See part II of the majority opinion. Another way to read defense counsel's statement is that he was clarifying or providing the full and accurate agreement of the parties from his own perspective as a party to the agreement, which was that the stipulation was limited to the court trial, as he said. Indeed, ultimately, when the stipulation was admitted into evidence, the trial court stated, "[i]t's going to be a full exhibit for purposes of the court trial . . . ."

The majority also discounts the trial court's statement at the close of

State *v.* Robles

for the stipulation to be used only for purposes of count two, and the trial court considered it beyond its limited purpose, I would conclude that such an error is an evidentiary or " 'trial error,' " as described by the United States Supreme Court in *Lockhart* v. *Nelson*, supra, 488 U.S. 40. However, that claim is not before us.

The sufficiency claim that is before us requires that we consider all of the evidence the trial court reviewed in arriving at its finding. This is the way in which this court has always addressed sufficiency of the evidence claims. For example, in *State* v. *Gray*, supra, 200 Conn. 523, when addressing a sufficiency of the evidence claim, this court considered the defendant's statement obtained in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), which was improperly admitted. See *State* v. *Gray*, supra, 534–36. This court concluded that the evidence, including the improperly admitted statement, was sufficient on some counts and not sufficient on others. Id., 537–38. However, because this court concluded that the statement was improperly admitted, it remanded the case for a new trial on those counts for which there was sufficient evidence notwithstanding the evidentiary

evidence regarding the stipulation that it was "the only evidence that was received solely for the second *and third* count"; (emphasis added); as "imprecise" and defense counsel's failure to object to the prosecutor's and the trial court's reliance on the stipulation as an "oversight . . . ." Part II of the majority opinion. I disagree. I would consider the prosecutor's express reliance on the stipulation for purposes of count three, the trial court's repeated references to and reliance on it, defense counsel's statement that the stipulation was for the court trial, and defense counsel's failure to object as strong evidence that the parties and the trial court understood and intended for the stipulation to be admitted for purposes of the court trial, which involved a determination of guilt as to counts two and three. In the final analysis, at best, there is more ambiguity on this point than the majority admits. Consequently, contrary to the majority, I would read any ambiguity in the record surrounding the initial submission of the stipulation into evidence and how that evidence ultimately was used to support the trial court's finding rather than in the strictest light possible to overturn the finding.

State *v.* Robles

error. See id., 538–39; see also id., 539 ("[when] a reversal of a conviction is not a result of insufficiency of evidence but is predicated on, for example, as here, the reception of inadmissible evidence . . . a remand for a new trial is proper and an appellate court should not review the remaining evidence to determine whether it is sufficient to sustain the conviction").

Here, the trial court's use of the stipulation beyond its limited purpose is properly understood as a trial error, which, if harmful, would result in a reversal of the conviction and a new trial. This is consistent with how similar claims have been treated in the past. For instance, in *State* v. *Heinz*, 1 Conn. App. 540, 473 A.2d 1242, cert. denied, 194 Conn. 801, 477 A.2d 1021 (1984), the Appellate Court addressed a claim that the jury had improperly considered an exhibit for a purpose other than the limited one for which it was admitted. See id., 545–47. The court explained that "[i]t is error to admit an exhibit, particularly a key exhibit . . . for one purpose and then to charge the jury that it may be considered for another purpose." Id., 546–47. The Appellate Court then considered the claim as an evidentiary claim subject to harmless error analysis. See id., 547; see also *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 229, 165 A.3d 174 (2017) ("Evidence [that] is offered and admitted for a limited purpose only, and the facts found from such evidence, cannot be used for another and totally different purpose. . . . It was improper for the [trial] court to use the [disputed evidence] for substantive purposes when it was admitted for the limited purpose of testing [a witness'] credibility. *Such error, however, is subject to a harmless error analysis*." (Citation omitted; emphasis added; internal quotation marks omitted.)); *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 650, 867 A.2d 860 (applying harmless error analysis to claim that trial court had considered evidence for purpose other

State *v.* Robles

than limited one for which it was admitted), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).[3]

The United States Supreme Court has explained the importance of respecting the distinction between trial errors and sufficiency of the evidence claims. In *Lockhart* v. *Nelson*, supra, 488 U.S. 33, the court reasoned that, in its previous decision, *Burks* v. *United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978), the court "was careful to point out that a reversal based solely on evidentiary insufficiency has fundamentally different implications, for double jeopardy purposes, than a reversal based on such ordinary 'trial errors' as

[3] The majority appears to acknowledge that a claim that a jury considered improper evidence would be an evidentiary or trial error subject to harmless error analysis but then states that the error here would be harmful because, without the stipulation, there was insufficient evidence to support the trial court's finding on count three. See footnote 24 of the majority opinion; see also part II of the majority opinion. That entirely misses the point. Harmless error analysis is not used in analyzing a sufficiency of the evidence claim. See, e.g., *United States* v. *Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986) (harmless error inquiry does not focus on sufficiency of evidence); *Kotteakos* v. *United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) (distinguishing between harmless error analysis and sufficiency of evidence analysis and holding that "[a harmless error] inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error"). The application of harmless error in these cases demonstrates that the claim was deemed an evidentiary or trial error, not a sufficiency of the evidence claim. Moreover, if the error is determined to be harmful, the remedy in those cases is not acquittal but, rather, a new trial.

In addition, the majority attempts to distinguish the cases in which this court and others have treated a claim that a jury considered evidence for an improper purpose as an evidentiary or trial error on the ground that the present case is different because the trial court was the fact finder. I disagree that the fact that the trial court was the fact finder in this case somehow transforms a claim of an evidentiary or trial error into a sufficiency of the evidence claim. That is not consistent with this court's position in *State* v. *Taupier*, 330 Conn. 149, 193 A.3d 1 (2018), cert. denied, U.S. , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019), in which this court explained that a claim that a trial court improperly considered certain evidence when acting as the fact finder was an evidentiary claim, even though the defendant attempted to cast it as a sufficiency of the evidence claim. See id., 180–81.

348 Conn. 1 SEPTEMBER, 2023 41

State *v.* Robles

the 'incorrect receipt or rejection of evidence.' . . . [Although] the former is in effect a finding 'that the government has failed to prove its case' against the defendant, the latter 'implies nothing with respect to the guilt or innocence of the defendant,' but is simply 'a determination that [he] has been convicted through a judicial process [that] is defective in some fundamental respect.' " (Citation omitted; emphasis omitted.) *Lockhart* v. *Nelson*, supra, 40, quoting *Burks* v. *United States*, supra, 15.

On the basis of this distinction, the court further explained that "[p]ermitting retrial [when there has been a trial error] is not the sort of governmental oppression at which the [d]ouble [j]eopardy [c]lause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to 'obtai[n] a fair readjudication of his guilt free from error.' " *Lockhart* v. *Nelson*, supra, 488 U.S. 42, quoting *Burks* v. *United States*, supra, 437 U.S. 15. Accordingly, the United States Supreme Court in *Lockhart* concluded that a new trial was the appropriate remedy in a case in which the trier of fact had considered improper evidence in reaching its verdict, but in which, without that evidence, there would have been insufficient evidence to sustain the respondent's conviction. See *Lockhart* v. *Nelson*, supra, 34, 40–41.[4]

Courts in other jurisdictions have also remanded cases for a new trial in which a trial court improperly

---

[4] The majority does not even mention *Lockhart* and, instead, places great emphasis on *State* v. *Kareski*, 137 Ohio St. 3d 92, 98, 998 N.E.2d 410 (2013), from the Supreme Court of Ohio. See part II of the majority opinion. I would agree with the dissent in that case that the majority's holding in *Kareski* is "a departure from settled [double jeopardy] principles recognized by the United States Supreme Court . . . [and that, by] equating a reversal for evidentiary trial error with an acquittal for constitutionally insufficient evidence, the majority's holding runs headlong into a thicket of state and federal constitutional problems and will undoubtedly cause uncertainty and confusion for appellate courts." *State* v. *Kareski*, supra, 100 (French, J., dissenting).

State *v.* Robles

had admitted evidence, even when, without the improperly admitted evidence, there would have been insufficient evidence to support the finding or verdict. For instance, in *State* v. *Gibson*, 219 N.J. 227, 98 A.3d 519 (2014), the New Jersey Supreme Court concluded that the trial court erred by admitting video evidence and the testimony of a police officer from the pretrial suppression hearing, and that, "[w]ithout that evidence, the [s]tate could not meet its burden of proof." Id., 246. Relying on *Lockhart*, the court concluded that, because this improperly admitted evidence had been before the fact finder, there was sufficient evidence. See id. The court further concluded that a remand for a new trial was the appropriate remedy and "emphasize[d] the importance of distinguishing between those errors that are procedural in nature, and those errors that affect the sufficiency of the evidence. . . . [I]t would be a high price indeed for society to pay were every [defendant] granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." (Internal quotation marks omitted.) Id., 246–47.

In the present case, the majority asserts that, "[c]ontrary to [my] contention [in this opinion], the issue is not whether the trial court *improperly admitted* the stipulation for purposes of count three. The issue, rather, is whether the court *improperly used* evidence that was properly admitted in order to support a different purpose for which the evidence was not admitted. The trial court did not admit the stipulation for purposes of count three *at all* because it was never asked to do so." (Emphasis in original.) Part II of the majority opinion. Setting aside the fact that defense counsel did say that the stipulation was for the court trial, which included count three, it is undisputed that the stipulation was admitted into evidence, that the state relied on it in support of count three, and that the trial court consid-

State *v.* Robles

ered the stipulation for purposes of count three. The
majority makes a meaningless distinction between the
admission of the stipulation into evidence for count
three and the trial court's consideration of the stipula-
tion for purposes of count three.[5] Such a distinction is
irrelevant. Whether we call it improper admission or
improper use or consideration, the error is an eviden-
tiary or trial error, not unlike any other claim that a
fact finder considered evidence for one count that it
should not have. Therefore, because the trial court con-
sidered the stipulation for count three without objec-

---

[5] The majority asserts that "[t]he logical extension of this argument is
that, whenever a trial court has used information that was not admitted as
evidence at trial to reach its decision—for example, when a trial court
conducts its own independent investigation of the facts after the close of
evidence—the information was, for all intents and purposes, admitted as
evidence, albeit improperly. . . . We cannot agree with such an untenable
proposition." Footnote 23 of the majority opinion. The majority's attempt
to recast my position is itself untenable. My position is that, *in our review
of a sufficiency of the evidence claim,* there is no meaningful distinction
between evidence that was improperly admitted and evidence that was
admitted but considered by the fact finder beyond the purpose for which
it was admitted. For purposes of a sufficiency of the evidence claim, a
reviewing court must consider the full quantum of evidence considered by
the trial court, even if some of the evidence was improperly considered.

That is not to say that a fact finder's improper consideration of facts not
in evidence cannot be addressed. For instance, in *State* v. *Newsome*, 238
Conn. 588, 682 A.2d 972 (1996), this court considered a claim that the
defendant's right to a fair trial had been violated because one of the jurors
allegedly drove past the crime scene to investigate. See id., 626. In consider-
ing that claim, this court explained that "not every incident of juror miscon-
duct requires a new trial"; id., 627; and that "[t]he question is whether . . .
the misconduct has prejudiced the defendant to the extent that he has not
received a fair trial." (Internal quotation marks omitted.) Id., 628. This court
explained that, "in cases [in which] the trial court is directly implicated in
juror misconduct, the state bears the burden of proving that [the] misconduct
was harmless error." (Internal quotation marks omitted.) Id. A trial court
conducting its own investigation is simply a different type of error. I am in
no way suggesting that this error cannot be addressed. Instead, I would
follow the lead of the United States Supreme Court and conclude that such
an error would be a trial error because the defendant "has been convicted
through a judicial process [that] is defective in some fundamental respect."
(Emphasis omitted; internal quotation marks omitted.) *Lockhart* v. *Nelson*,
supra, 488 U.S. 40.

State *v.* Robles

tion, we must also consider the stipulation in connection with this sufficiency of the evidence claim. As we explained in the context of a jury trial in *Riley* v. *Travelers Home & Marine Ins. Co.*, 333 Conn. 60, 214 A.3d 345 (2019), "a court reviewing the sufficiency of the evidence to support a jury's verdict must consider all of the evidence considered by the jury returning the verdict . . . ." (Emphasis omitted.) Id., 64.

The majority relies on *State* v. *Knox*, 201 Conn. App. 457, 472–74, 242 A.3d 1039 (2020), cert. denied, 336 Conn. 905, 244 A.3d 146 (2021), and cert. denied, 336 Conn. 906, 243 A.3d 1180 (2021), in support of its position that an acquittal due to evidentiary insufficiency is required here. See part II of the majority opinion. *Knox*, however, cannot support the weight the majority places on it.

The majority provides the following explanation for *Knox*: "[W]hen evidence was admitted exclusively for purposes of one particular count, [the] jury could not rely on [that] evidence to support [a] finding that [the] state had established [an] element of crime charged in another count . . . ." (Citations omitted.) Id.; see also *State* v. *Knox*, supra, 201 Conn. App. 472. I have no quarrel with that general proposition. It's the other distinguishing features of *Knox* that make the comparison between this case and that one problematic. For instance, unlike in the present case, in *Knox*, it was undisputed that the defendant's prior felony conviction was admitted for a limited purpose—namely, for the criminal possession of a firearm charge and for no other purpose. *State* v. *Knox*, supra, 464–65. Indeed, in *Knox*, "[w]hen the parties' stipulation regarding the defendant's prior felony conviction was admitted into evidence and read to the jury, the [trial] court limited its use to the charge of criminal possession of a firearm. The court repeated that limitation during its charge to the jury. At no point did the [prosecutor] object to the

State *v.* Robles

limited purpose for which the evidence of the defendant's prior felony conviction could be used.'' Id., 472. Therefore, the fact finder did not consider the felony conviction for any other purpose, including the defendant's charge of tampering with physical evidence. See id., 472–73.

Accordingly, because the fact finder was expressly instructed not to consider the prior felony conviction for any count other than the criminal possession of a firearm charge, the Appellate Court concluded in *Knox* that, on appeal, it could not consider the felony conviction when determining whether there was sufficient evidence to support the jury's verdict on the tampering with physical evidence charge. See id., 473–74. In other words, the Appellate Court understood that the sufficiency of the evidence claim had to be viewed in light of the same evidence that the jury considered in deciding the tampering charge. Therefore, I would conclude that *Knox* is consistent with my position that, in resolving a sufficiency of the evidence claim, all evidence considered by the fact finder is considered by the reviewing court.

In the present case, the prosecutor argued that the stipulation applied to count three during his closing argument, the trial court expressly applied the stipulation to count three in its decision, and defense counsel at no point challenged the court's consideration of the stipulation for purposes of count three. Thus, unlike in *Knox*, the record in the present case demonstrates that the fact finder itself considered the stipulation for purposes of count three. Therefore, unlike in *Knox*, in which the fact finder did not consider the stipulation and, accordingly, the reviewing court could not, in the present case, the fact finder did consider the stipulation, and this court should also do so.

I also disagree with the majority's characterization of defense counsel's failure to object to the trial court's

State *v.* Robles

explicit reliance on the stipulation for purposes of count three prior to, during, or after closing arguments as a "result of an oversight . . . ." Footnote 19 of the majority opinion; see also part II of the majority opinion. That characterization is remarkable.

First, the record on why defense counsel failed to object is silent, and, therefore, I do not think we can surmise counsel's motive. Assessing counsel's motives on direct appeal without input from counsel is something we typically do not do. See, e.g., *State* v. *Leecan*, 198 Conn. 517, 541, 504 A.2d 480 ("[t]he trial transcript seldom discloses all of the considerations of strategy that may have induced counsel to follow a particular course of action"), cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986). Normally, a hearing would be required, such as a habeas proceeding or a hearing on a petition for a new trial, at which counsel can explain his or her reasons for not objecting to certain evidence before we deem the absence of an objection an oversight.

Second, the majority's characterization of defense counsel's actions as an "oversight" suggests that counsel was not competent and that the failure to object was a mistake. The failure to object could just as easily suggest that defense counsel did not view the stipulation as limited to count two, given the fact that the stipulation itself did not expressly provide that it was limited to count two, the fact that defense counsel told the trial court that the stipulation applied to the court trial, and the fact that he did not include such a claim in a motion for a judgment of acquittal following the court trial. Of course, counsel is not required to object to every impropriety during a trial. Indeed, in the habeas context, when we review an attorney's actions taken during the criminal trial, we presume that his or her actions were the result of sound trial strategy, unless proven otherwise. See, e.g., *Strickland* v. *Washington*,

State *v.* Robles

466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy" (internal quotation marks omitted)).

Finally, it is lost on me how, on direct appeal, this purported oversight is or should somehow be treated differently from any other unpreserved evidentiary claim. Indeed, the majority excuses defense counsel's failure to object to the trial court's express reliance on the stipulation in a timely manner as "an oversight," yet concludes that the defendant is entitled to an acquittal on count three because of the trial court's use of the stipulation. Part II of the majority opinion. The majority runs afoul of our well established rule that parties must preserve their claims for appeal, in the absence of very limited circumstances, such as when a defendant is entitled to have his claim reviewed under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), for constitutional claims or under the plain error doctrine for obvious error that results in manifest injustice. See, e.g., *State* v. *Bermudez*, 274 Conn. 581, 586, 876 A.2d 1162 (2005). See generally *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 149–61, 84 A.3d 840 (2014) (discussing circumstances under which reviewing court may consider party's unpreserved claims). Is there now an "oversight" exception for unpreserved evidentiary claims? Rather than go down this new road on which the majority is traveling with respect to evidentiary claims raised in conjunction with, or masquerading as, sufficiency claims, I would treat this evidentiary claim like every other unpreserved evidentiary claim and not review it. Therefore, I would conclude that any evidentiary based claim that the trial court improperly considered a stipulation beyond the

State *v.* Robles

purpose for which it was admitted was not preserved and is not before us. This appeal raises only a sufficiency claim, which, as I explained, requires that we consider the improperly considered evidence that was considered by the fact finder.

Accordingly, I would conclude that our review of the sufficiency claim must involve a review of all of the evidence that the trial court considered, including the stipulation, and the reasonable inferences drawable therefrom.

II

Having concluded that the stipulation should be considered when reviewing the sufficiency of the evidence claim, I now consider whether the evidence was sufficient to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

The weapon in a motor vehicle statute, General Statutes (Rev. to 2017) § 29-38, provides in relevant part: "(a) Any person who knowingly has, in any vehicle owned, operated or occupied by such person, any weapon, any pistol or revolver for which a proper permit has not been issued as provided in section 29-28 . . . shall be guilty of a class D felony . . . ." The defendant challenges the sufficiency of the evidence with respect to the fourth element, namely, that he had no proper permit. See, e.g., *State* v. *Davis*, supra, 324 Conn. 794–95, 801.

As this court previously has explained, "the lack of a proper permit is an essential element of the crime charged and . . . the state ha[s] the burden of proving beyond a reasonable doubt that a proper permit for the weapon had not been issued as provided in [General Statutes] § 29-28." *State* v. *Beauton*, 170 Conn. 234, 240, 365 A.2d 1105 (1976). General Statutes (Rev. to 2017)

State *v.* Robles

§ 29-28,[6] which is expressly referenced in § 29-38 (a), provides in relevant part: "(b) . . . . No state or temporary state permit to carry a pistol or revolver shall be issued under this subsection if the applicant . . . (2) has been convicted of (A) a felony . . . ." The evidence here, through the stipulation, established that the defendant had been convicted of two felonies in 2006, one of which was illegal possession of a weapon in a motor vehicle.

Given that the parties stipulated that the defendant had those two prior felony convictions, it was reasonable for the trial court to infer that the defendant did not possess a "proper permit . . . ." General Statutes (Rev. to 2017) § 29-38 (a). Indeed, by operation of law, the defendant could not possess a "proper permit . . . as provided in section 29-28 . . . ." General Statutes (Rev. to 2017) § 29-38 (a). In my view, the fact that the defendant was a convicted felon was sufficient proof beyond a *reasonable* doubt that he did not possess a *proper* permit.

The state was not required to eliminate every theoretically possible scenario under which the defendant might have had a permit despite being a convicted felon.

The state was required to prove that the defendant did not possess a proper permit beyond a reasonable doubt, not to a mathematical certainty, or beyond all possible doubt. See, e.g., Connecticut Criminal Jury Instructions 2.2-3, available at https://www.jud.ct.gov/ JI/Criminal/Criminal.pdf (last visited September 8, 2023) ("[p]roof beyond a reasonable doubt does not mean proof beyond all doubt . . . [as] the law does not require absolute certainty on the part of the jury before it returns a verdict of guilty"). Certainly, the state's burden is not the "theoretically *impossible*" stan-

_____
[6] Hereinafter, all references to § 29-28 in this opinion are to the 2017 revision of the statute.

State *v.* Robles

dard to which the majority now holds the state. (Emphasis in original.) Footnote 17 of the majority opinion.

Consistent therewith, it is important to keep in mind that, in a sufficiency of the evidence appeal, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier of fact's finding or] verdict of guilty." (Internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 567, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). Consequently, I would conclude that the trial court correctly determined that the state proved beyond a reasonable doubt that the defendant had a weapon "for which a *proper* permit ha[d] not been issued as provided in section 29-28 . . . ." (Emphasis added.) General Statutes (Rev. to 2017) § 29-38 (a).[7]

With respect to the defendant's contention that the trial court improperly took judicial notice of § 29-28, I disagree. In fact, the court was obligated to consider the provisions of § 29-28 in determining whether the defendant had violated § 29-38. Indeed, § 29-38 (a) directs the court to look to and apply § 29-28. See General Statutes (Rev. to 2017) § 29-38 (a) (proscribing having weapon in vehicle "for which a proper permit has not been issued as provided in section 29-28").

Therefore, the trial court's application of § 29-28 to the facts of the present case was no more than the court's application of its knowledge of the law to the case in the same way that a jury would have done once

[7] My conclusion that affirmance is the appropriate outcome here does not mean that I disagree with the majority's reflection that the best practices were not followed in this case. The stipulation could have been explicit as to the purpose for which it was to be used, and the prosecutor could have made his reliance on the stipulation for count three more transparent during the course of the trial, rather than after the close of evidence.

it was instructed on the applicable law. See, e.g., *State v. Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003) ("[i]n the absence of any evidence to the contrary, [j]udges are presumed to know the law . . . and to apply it correctly" (internal quotation marks omitted)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); see also, e.g., 23 C.J.S., Criminal Procedure and Rights of Accused § 986 (2023) ("[t]rial courts and trial judges are presumed to know the law, and their rulings come to [an] appellate court with a presumption of correctness" (footnotes omitted)); cf. *State v. Baltas*, 311 Conn. 786, 810, 91 A.3d 384 (2014) (it is well established that "[a] request to charge [that] is relevant to the issues of [a] case and [that] is an accurate statement of the law must be given" (internal quotation marks omitted)). The trial court acted properly in its role as fact finder by relying on its knowledge of the law, namely, that the defendant, as a felon, was not able to possess a proper permit for a weapon pursuant to the provisions of § 29-28 at the time of the charged crime. Therefore, I would conclude that there was sufficient evidence to support the defendant's conviction of illegal possession of a weapon in a motor vehicle.

Accordingly, I respectfully dissent from part II of the majority opinion.

———————————